In the Matter of MARGARET MORITZ, Petitioner, v BOARD OF EDUCATION OF THE GOWANDA CENTRAL SCHOOL DISTRICT et al., Respondents.

Fourth Department, December 16, 1977

APPEARANCES OF COUNSEL

*Bernard F. Ashe (Emanuel Tabachnick* of counsel), for petitioner.

*Cash & Lippert, P. C. (J. Richard Lippert, II,* of counsel), for Barbara Lewandowski, respondent.

*Roger E. Pyle* for board of education and others, respondents.

## OPINION OF THE COURT

Simons, J.

Petitioner brings this article 78 proceeding challenging the action of respondent Board of Education in terminating her service as a teacher in the Gowanda Central School District. She seeks reinstatement as a tenured employee with back pay and full benefits from March 1, 1976 to the present. On June 9, 1976 petitioner was elected to the Board of Education of the Gowanda Central School District. She took office on July 1, 1976.

The primary issue before us is whether principles of equitable estoppel may be applied to foreclose the respondent school board from asserting now that its prior grant of tenure to petitioner was invalid.

Petitioner was hired by the Gowanda Central School District during the school year 1967-1968 when the board decided to expand its language program in junior high school. The pupil enrollment did not warrant hiring another full-time language teacher and the board therefore hired petitioner part time and granted her a three-year probationary appointment. She was assigned to teach four German classes and received two-thirds pay for her duties. She continued on part-time probationary status at half pay during the 1968-1969 and the 1969-1970 school years and at the conclusion of her third year, she was awarded tenure by the board, effective September 1, 1970. She continued to teach part time until the year 1974-1975 and was compensated at pay which varied from one quarter to two thirds of full pay. During the school year 1974-1975 petitioner was assigned as a full-time teacher to teach four French classes in senior high school. Throughout her period of employment, petitioner received retirement and fringe benefits as if she were a full-time teacher, and she advanced in grade automatically so that at the time of her discharge in March, 1976 she was on Step 10 of the pay scale.

When petitioner was hired in 1967 her children were two and six years of age and concededly petitioner had no desire to teach full time until they entered school. In the fall of 1970 a new full-time German teacher was employed for one year and she in turn was replaced in the fall of 1971 by respondent Lewandowski. Petitioner, however, did not request appointment to the full-time teaching vacancy available in German in either year, although both of her children were then of school age and she believed that she was a tenured teacher with seniority over both appointees. Respondent Lewandowski was certified in German in 1972 and was granted tenure in June, 1974, effective September, 1974.

In the fall of 1973 the board began to "phase out" its junior high school language program. It was during this period that petitioner, for the first time, complained to the superintendent about her part-time job and her assignment in French. All part-time teaching positions were abolished as of September 1, 1974 and as noted, petitioner was assigned as a full-time French teacher in senior high school for the year 1974-1975, replacing a teacher who had taken a leave of absence.

Petitioner was certified to teach German and French and in the fall of 1975 the school district had one full-time French position and one full-time German position. Respondent Lewandowski occupied the full-time German position and another teacher, senior to both petitioner and respondent Lewandowski returned from her previous year's leave of absence and resumed teaching French.

Thus, during the 1975-1976 school year there was no unfilled French or German position. The only vacancies which existed were in Mathematics and Spanish, subjects which petitioner was not qualified to teach. The board offered to place her on an eligibility list, and when petitioner requested full-time employment, the board assigned her to teach Spanish. She accepted the Spanish position under protest and advised the board that she was exercising her rights of seniority to teach French or German, pursuant to section 2510 of the Education Law. The board then instituted proceedings pursuant to section 3020-a of the Education Law, charging (1) that petitioner had been granted tenure illegally (it had been so advised by counsel to the State Education Department in April, 1975) and (2) that petitioner was incompetent to teach Spanish. The second charge requested removal pursuant to paragraph (b) of subdivision 2 of section 3012 but the language

used purports to charge incompetency resulting from petitioner's lack of certification in Spanish pursuant to paragraph (c) of subdivision 2 of section 3012.

After a hearing, the panel declined to rule on the question of tenure and dismissed the first charge. By a vote of two to one it held against petitioner on the second charge. It recommended that petitioner's service be terminated but that, pursuant to subdivision 3 of section 2510 of the Education Law, she be placed on a preferred eligibility list for a period of four years for any position she was qualified to teach and that her seniority be computed from September 1, 1974.

After considering the report of the hearing panel, respondent Board of Education also refused to pass on the question of tenure and it voted to terminate petitioner's services because she had failed to "obtain or maintain" certification in Spanish. It granted her seniority from September 1, 1974 until her suspension on September 8, 1975 and declared that she had waived her right to be placed on the preferred eligibility list by demanding assignment to an area in which she was uncertified. On March 1, 1976 the board ordered petitioner dismissed and this article 78 proceeding followed.

■ From these facts, it is apparent that petitioner's service as a part-time teacher from 1967 until at least 1973 was by the agreement of the parties and that the board's grant of tenure in 1970 was with full knowledge that her probationary appointment and employment was for part-time work. Petitioner's probationary appointment and the board's subsequent grant of tenure met all the formal requirements of section 3012 of the Education Law but they were not warranted because part-time service by a teacher does not constitute probationary service for purposes of acquiring tenure (*Matter of Rosenberg v Board of Educ.*, 51 AD2d 551; *Matter of Nyboe v Allen*, 7 AD2d 822; *Matter of Zannitto*, 14 Ed Dept Rep 16; *Matter of Parker*, 12 Ed Dept Rep 96; *Matter of Gates*, 12 Ed Dept Rep 194; *Matter of Sura*, 12 Ed Dept Rep 81). That being so, the issue is whether the board may and should be estopped from disclaiming its actions.

■ We first distinguish, as the parties have, tenure by estoppel or acquiescence. It is possible, of course, for a full-time probationary teacher to achieve tenure by continuing beyond the expiration of the probationary term with the knowledge of the board (see *Matter of Mannix v Board of Educ.*, 21 NY2d 455; *Matter of Monan v Board of Educ.*, 280

App Div 14; *Matter of Nyboe v Allen, supra).* That is not the case before us, however, for Ms. Moritz has never served a probationary period as a full-time teacher and if that were all there is to the case the board would not be estopped from denying that she had acquired tenure by acquiescence as a result of her part-time service *(Matter of Rosenberg v Board of Educ., supra; Matter of Gates, supra).* But that is not all there is to the case, for the board not only placed petitioner on part-time probationary status for three years, it granted her tenure in writing upon the recommendation of the superintendent in 1970 and it did so with full knowledge of the facts of her past employment. The board complied with the literal requirements of the statute and throughout petitioner's employment it accorded her all the benefits accorded to full-time teachers.

██ The doctrine of equitable estoppel applies to municipal corporations (see *La Porto v Village of Philmont,* 39 NY2d 7; *Bender v New York City Health & Hosps. Corp.,* 38 NY2d 662; *Planet Constr. Corp. v Board of Educ.,* 7 NY2d 381), but it may not be invoked to prevent a municipality from disclaiming the unauthorized or unlawful acts of its employees and thereby give vitality to otherwise illegal conduct *(Town of Guilderland v Swanson,* 41 Misc 2d 398, mod 29 AD2d 717, affd 24 NY2d 872; *Abell v Hunter,* 211 App Div 467, affd 240 NY 702; *People ex rel. Sweet v Board of Supervisors of St. Lawrence County,* 101 App Div 327). The board now contends that its actions were void and that any grant of tenure on the basis of part-time work was beyond its statutorily granted powers and not a decision which may bind the district. We disagree.

The Legislature has delegated to boards of education broad power to hire and fire teachers (see Education Law, §§ 2503, 2554). This power was formerly exercised by employment contracts between the board and the individual teacher which were renewed annually, if they were renewed at all. The tenure statutes (Education Law, §§ 3012, 3013) were enacted to alter this practice, to change teachers' employment from a system of tenure by contract terminating automatically after the expiration of the school year to one of permanence *(Walcott v Fisher,* 274 App Div 339, affd 299 NY 688; *Matter of Carter v Kalamejski,* 255 App Div 694, 697, affd 280 NY 803). The primary purpose of the legislation was to assure security to competent teachers in positions to which they have been appointed *(Matter of Boyd v Collins,* 11 NY2d 228; *Matter of*

*Monan v Board of Educ., supra),* and it should not be interpreted in such a way that the board's improper acts are found void for the purpose of defeating a teacher's rights. Nothing in the tenure statutes expressly limits probationary employment or tenure to full-time teachers and inasmuch as the statute is in derogation of the board's common-law right of contract, it is to be narrowly construed *(Matter of McMaster v Owens,* 275 App Div 506). Court decisions have properly held that full-time service is required before the board may grant tenure, but the statute does not. Thus, although the board's action in this case was improper, it was within its broad power of employment and not *ultra vires.*

There is a temptation to compare the tenure statutes to civil service regulations. Certainly there is a similarity between them. But in most cases teaching merit is determined by observation of the teacher during a probationary period and by State certification procedures, not by competitive examination. Petitioner has not served the required full-time probationary period but her competence is admitted and has been determined under the statutory formula for she has worked in the school district since 1967, has been evaluated and recommended by the superintendent and granted tenure by the board. There is no allegation that she was not subjected to the same conscientious and thorough evaluation during her probationary period which was accorded to other teachers in the district working full time. Thus, the irregularity of her appointment is not a failure to determine her competence; it is the part-time probationary period that she served (cf. *Matter of Board of Educ. v Nyquist,* 31 NY2d 468). Since the board's action was not *ultra vires* the question is whether respondents should be estopped from denying its effect.

The board might fairly find from the evidence at the hearing that no representation by its agents induced petitioner to forego jobs allegedly offered to her prior to 1973 because of her desire to continue part-time work and to be near her home. This was evident from her admissions and her failure to complain when new appointees were hired to teach German full time in 1971 and again in 1972. But the proof establishes that the respondent board represented by words and conduct that its 1970 grant of tenure to petitioner was legal and binding on it, that she requested and was promised full-time employment in 1974, and that because of these representations she declined an offer to teach at the State

University of Buffalo and the board should be estopped from denying that petitioner is a tenured teacher of the Gowanda Central School District (see *Bender v New York City Health & Hosps. Corp.,* 38 NY2d 662, 668, *supra).*

■ The second charge against petitioner alleged that she had failed to "maintain or obtain" certification as required by law. Despite its confusing language, the charge was obviously intended to result in petitioner's discharge because she was not certified to teach Spanish, and the parties understood it as such (see *Matter of Lynch v Nyquist,* 41 AD2d 363, affd 34 NY2d 588). Admittedly, she was not certified in Spanish and at that time she was also the teacher with the least seniority to teach French or German, the subjects in which she was certified. There is no evidence, however, that she was incompetent in fact. Quite the contrary appears from the record, and the board erred, therefore, in discharging petitioner without first demonstrating that it was unable to adjust its schedules to permit her, a tenured teacher, to teach within her certification *(Matter of Amos v Board of Educ.,* 54 AD2d 297, affd 43 NY2d — [Nov. 17, 1977]; *Matter of Steele v Board of Educ.,* 53 AD2d 674, affd 42 NY2d 840). The parties allege that the full-time position in French became vacant in 1976. If that is the case, a further hearing may not be necessary and if petitioner elects to take this position, she would be entitled to it by reason of her seniority (Education Law, § 2510, subd 3).

■ By our holding we do not intend that petitioner has preferred rights vis-à-vis respondent Lewandowski. The board could not prejudice Lewandowski's position by its conduct towards petitioner. Although we hold that the board is equitably estopped from denying petitioner tenure and her employment started in 1967, that employment was frequently part time, and part-time employment may not be used to acquire seniority *(Matter of Reisinger v Board of Educ.,* 57 AD2d 868; cf. *Matter of Abrams v Ambach,* 43 AD2d 883; *Matter of Blanchard,* 14 Ed Dept Rep 260 [a tenured teacher is entitled to seniority credit for time served *after* her position is converted to part time]). Petitioner's seniority should be computed from September 1, 1974, the date when all part-time positions were abolished by the board and when petitioner first started to teach full time in senior high school. Respondent Lewandowski, on the other hand, started full-time employment with the district in September, 1971 and her seniority is to be computed from that date.

■ Finally, if respondent board is unable to adjust its teaching schedules to accommodate petitioner, and if there is no available position to which she is entitled, the board must place petitioner on the preferred eligibility list pursuant to subdivision 3 of section 2510 of the Education Law (see *Matter of Lezette v Board of Educ.,* 35 NY2d 272).

■ All of this relief is affected by petitioner's subsequent election as a member of respondent board of education. Inasmuch as she was wrongfully discharged, she is entitled to full pay and benefits from the time of her discharge on March 1, 1976 until she assumed office as a board member July 1, 1976. She is also entitled to seniority credit from September 1, 1974 until July 1, 1976. On that date, however, she was disqualified from teaching and acting as a board member at the same time (General Municipal Law, § 801; *Matter of Dykeman v Symonds,* 54 AD2d 159).

The determination of respondent board should be annulled and petitioner awarded pay and benefits for the period from March 1, 1976 to July 1, 1976. If she chooses to resign from the board of education, then she is entitled to a hearing to determine whether she is entitled to reinstatement as a French or Geman teacher as provided in this opinion and, failing that, she is to be placed on the preferred eligible list pursuant to subdivision 3 of section 2510 of the Education Law.

HANCOCK, JR., J. (dissenting). I respectfully dissent. The majority hold that a school board, through operation of the doctrine of estoppel, may effectively confer tenured status on a teacher who concededly has not met the qualifications for tenure mandated by the statute (Education Law, § 3012).

The effect of the provisions of section 3012 of the Education Law providing that tenure appointments shall be made from those who are recommended as "competent, efficient and satisfactory" and who have "served the probationary period as provided in this section" (Education Law, § 3012, subd 2) was to abrogate the board's power to enter into contracts covering positions to which the tenure laws are applicable. *(Walcott v Fisher,* 274 App Div 339, affd 299 NY 688.) Therefore, because the board was not empowered to confer tenure by contract, but only in the exercise of the authority granted to it by section 3012 of the Education Law, it follows that the purported appointment of petitioner, who had not completed the

three-year probationary period, was *ultra vires* and of no effect. *(Matter of Weinbrown v Board of Educ.,* 28 NY2d 474; *Matter of Boyd v Collins,* 10 AD2d 584; *Walcott v Fisher, supra; Matter of High v Board of Educ.,* 169 Misc 98; *Ralston v Derry Township School Dist.,* 363 Pa 58; see, particularly, *Matter of Rosenberg v Board of Educ.,* 51 AD2d 551, holding that part-time teaching service does not constitute the probationary service required by the statute as a prerequisite to a tenure appointment.)

I agree that a primary purpose of the tenure statutes is to provide security to that group of teachers who have been appointed to tenure after completing the probationary term and receiving a favorable recommendation from the superintendent. There is nothing in the legislation, however, evincing an intention that the qualifications for tenure should be relaxed or that tenure protection should be conferred on those who do not qualify. On the contrary, the provisions of the tenure statutes establishing minimum requirements for tenure were clearly designed to assure the public that only those who meet the statutory qualifications could receive the permanent status of tenure. Thus, a "probationary period is required so that school districts may ascertain which teachers are 'competent, efficient and satisfactory' (Education Law, § 2509, subd. 2; § 3012, subd. 2; § 3014, subd. 2) prior to appointing them to tenure" *(Matter of Weinbrown v Board of Educ., supra,* p 476).

I must conclude, therefore, that the purported appointment of petitioner, an unqualified person, not only infringed the requirements of section 3012 of the Education Law, but was adverse to its legislative purpose of assuring that tenure appointees meet minimum requirements. Such unauthorized appointment could not be transmuted into a valid act through the operation of an estoppel. *(Town of Guilderland v Swanson,* 41 Misc 2d 398, mod 29 AD2d 717, affd 24 NY2d 872; *Abell v Hunter,* 211 App Div 467, affd 240 NY 702. See particularly *Matter of Rosenberg v Board of Educ. [supra],* where as here, petitioner, a part-time teacher, claimed tenured status, and it was held that actions of the board contrary to the statute on which she relied did not effect an estoppel.)

Even assuming that estoppel under certain circumstances might be applicable, I do not find the elements of estoppel here. Petitioner, although she has not completed her probationary term, has been the recipient of benefits as a tenured

teacher. There is no showing of a change of position in reliance on the board's unauthorized act, or of any resultant detriment, of the type shown in *Bender v New York City Health & Hosps. Corp.* (38 NY2d 662, 668) where, as a result of the action of the corporation counsel of New York City, the plaintiffs were lulled into not filing a notice of claim in a timely fashion against the proper party defendant, and thus lost their claim. That plaintiff is losing benefits she was never entitled to receive is not sufficient.

The potential consequences of the majority's holding appear obvious. For if, as a result of the board's illegal appointment and the teacher's claimed reliance, this teacher may receive permanent tenure, although she has never fulfilled the probationary requirements, so may other teachers achieve tenure who do not meet the statutory qualifications in other respects.

MOULE, J. P., and CARDAMONE, J., concur with SIMONS, J.; HANCOCK, JR., J., dissents and votes to confirm the determination in an opinion.

Determination annulled, with costs, and petition granted in accordance with opinion by SIMONS, J.